<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH ARUANNO, | : | Civil No. 09-1542 (JLL) |
| Plaintiff, | : | |
| | : | <u>OPINION</u> |
| v. | : | |
| OFFICER GREEN, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

    JOSEPH ARUANNO, #363
    Special Treatment Unit- Annex
    P.O. Box #CN905
    Avenel, NJ 07001

**LINARES**, District Judge:

    Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent Predator Act, filed a Complaint without prepayment of fees pursuant to 28 U.S.C. § 1915. This Court dismissed the Complaint for failure to state a claim upon which relief may be granted, without prejudice to the filing of an amended complaint stating a cognizable claim under 42 U.S.C. § 1983. Plaintiff thereafter filed an Amended Complaint consisting of a five-page narrative. (Docket Entry #11.) This Court has screened the Amended Complaint for dismissal, as required by 28 U.S.C. § 1915(e)(2)(B), and will dismiss the Amended Complaint because it fails to correct the deficiencies in the Complaint. This Court will give Plaintiff one final opportunity to assert facts stating a cognizable claim under the standard of <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009). <u>See</u> <u>Gasoline Sales, Inc. v. Aero Oil Co.</u>, 39 F. 3d 70, 74 (3d Cir. 1994)

(where plaintiff is not seeking claims that were not known about earlier but to modify allegations in hopes of remedying factual deficiencies in prior pleadings, "three attempts at a proper pleading is enough").

## I.  BACKGROUND

Plaintiff has been civilly committed as a sexually violent predator since 2004.  As explained by the Third Circuit Court of Appeals,

> [i]n 1994, while in Florida, he exposed himself to two adolescent girls as they were walking home from school and engaged in lewd conduct in their presence.  As a result of this incident, Aruanno pled guilty to second-degree lewd conduct, and was sentenced to ten years' probation.  Just two years later, in 1996, Aruanno sexually molested an eight-year-old girl who had been playing on the front steps of her house in Wildwood, New Jersey.  A jury convicted Aruanno of second-degree sexual assault, and he was sentenced to ten years in prison, and disqualification from parole for five years.  The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence.  The New Jersey Supreme Court denied certification.  State v. Aruanno, 793 A. 2d 716 (N.J. 2002) (table op.).
>
> In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey . . . filed a petition to involuntarily commit Aruanno pursuant to the New Jersey Sexually Violent Predator Act ("SVPA), N.J.S.A. § 30:4-27.24 et seq.  . . . .
>
> At the commitment hearing, the State presented the testimony of Dr. Vivian Shnaidman . . . .  Dr. Shnaidman testified that Aruanno was a chronic paranoid schizophrenic, but her diagnosis explicitly ruled out diagnoses of exhibitionism and pedophilia.  Nevertheless, Dr. Shnaidman opined that Aruanno's schizophrenia, when combined with his previous violent conduct, created a "very high" risk of future violence.  In particular, because Aruanno refused to take psychotropic medication to treat his schizophrenia, he would continue to suffer from psychotic delusions which would render sex offender treatment useless.  According to Dr. Shnaidman, Aruanno would have serious difficulty controlling his sexually

> predatory behavior without undergoing treatment for his
> schizophrenia . . . .
>
> Aruanno testified on his own behalf at the hearing. He denied
> committing either the Florida or the New Jersey offense, and
> testified that he believed the State had filed the commitment
> petition in retribution for his decision to go to trial for the New
> Jersey offense, rather than accepting a deal to plead guilty . . . .
>
> The state court found that Aruanno suffered from a mental
> abnormality which created "substantial, significant, severe
> difficulty controlling his sexually violent behavior," and granted
> the State's petition for involuntary commitment. Aruanno
> appealed the order, and the Appellate Division affirmed. In re
> Civil Commitment of J.A., 2007 WL 609284 (N.J. Super. Ct. App.
> Div. 2007).

Aruanno v. Hayman, C.A. No. 09-3499 slip op., pp. 2-4 (3d Cir. May 27, 2010).

In 2009, the Appellate Division of the New Jersey Superior Court reversed the Law Division's May 3, 2007, order denying post-conviction relief on the New Jersey conviction, vacated the judgment, and remanded the case.[1] See State v. Aruanno, 2009 WL 1046033 (N.J. Super. Ct. App. Div. April 21, 2009), certif. denied, 199 N.J. 543 (2009) (table).

Since his detention in New Jersey, Mr. Aruanno has filed 28 civil cases in this Court, and 27 appeals in the United States Court of Appeals for the Third Circuit.

The original Complaint in this matter named as defendants Officer Green, Steve Johnson and Cindy Sweeney. Plaintiff asserted the following facts:

> All defendants are denying proper access to the yard to minimize
> my exposure to the indoor smoking. And for speaking up against
> staff who smoke indoors I have been retaliated against which
> includes being assaulted and locked in a room full of smoke.

---

[1] This Court has not been able to determine through online research the outcome of the remand.

3

> Please see attached complaint and statement in support of complaint.

(Docket entry #1 at p. 6.)

Plaintiff further asserted that Administrator Steve Johnson violated his constitutional rights as follows: "Mr. Johnson is allowing smoking indoors exposing me to environmental smoke (ETS) which poses an unreasonable risk of harm contrary to the 14th amend. and the 8th amendments cruel and unusual punishment." (Docket entry #1 at p. 5.) Plaintiff states that he sought administrative relief by "rais[ing] the issue at community meetings and submitt[ing] institutional remedy forms, etc." (Id.) Attached to the form complaint was a two-page signed document which stated:

> This civil complaint, or lawsuit, is about being subjected to second-hand cigarette smoke from March-1999 until present.
>
> During that time I have been forced to share rooms with other persons who smoke, most of them chain-smoke, as well as being subjected to second-hand smoke of staff members who also smoke indoors in total defiance of the law and my rights, health and safety, etc...
>
> During this time I have brought it to the attention of all of the defendants I have named as well as many other staff members and the only result was being threatened and assaulted. I had brought to their attention the fact that I have never smoked and that being subjected to cigarette smoke makes it hard for me to breath[e], and that the policy of the institutions is that they are non-smoking.
>
> What has le[d] to the submission of this lawsuit is that I had submitted another institutional grievance about the smoking for which shortly after on April-9-07 I was moved from a room that I had been in and did not smell like smoke to the room right next door that smelled like cigar smoke. I had brought this to the attention of the officer who told me to move, Officer Green, and he said he did not care. I then asked to see the nurse and the Lt. for which he said Lt. Kent told him to move me and I was not going to

> see either.  I then requested to see the Administrator and he said Mr. Lagana had instructed them to do so.  This event also ended in being threatened and excessive force . . . .
>
> I submit this complaint as a retaliation complaint because the NJ Department of Corrections constantly threatens my life and retaliates with violence for my filing complaints in reply to the criminal conduct they engage in for which this occurred shortly after I complained about an incident to the NJ DOC that has since become Federal case #08-305 in the District Court of NJ.

(Docket entry #1 at pp. 8-9.)

This Court dismissed the original Complaint for failure to state a claim as follows:

> Plaintiff, a civilly committed sexually violent predator, brings this Complaint under § 1983 against Officer Green, Administrator Steve Johnson and Cindy Sweeney.  Although they are not listed in the caption or body of the Complaint, Plaintiff also lists the following persons in the attachment to the Complaint:  Lt. Robert Kent, Officer Clements, Administrator Paul Lagana, then Commissioner George W. Hayman, then Public Advocate Ron Chen, then DHS Commissioner Kevin Ryan, Director Merrill Main, Christine Todd Wittman, James McGreevey, Richard Codey and Jon Corzine.  Even construing the Complaint liberally, see Erickson v. Pardus, 551 U.S. 89 (2007), the Court finds that Plaintiff has failed to adequately state a § 1983 claim against the defendants . . . .
>
> Here, Plaintiff generally asserts that defendants denied access to the yard, that he has "been forced" to share rooms with patients and unspecified staff members who smoked cigarettes, that he "brought it to the attention of all of the defendants I have named," and that he was "assaulted" and otherwise retaliated against for complaining and filing a lawsuit.  (CM/ECF No. 1 at 6, 8).  Because the Complaint makes no specific, non-conclusory, factual allegations regarding Cindy Sweeney, Officer Clements, George W. Hayman, Ron Chen, Kevin Ryan, Merrill Main, Christine Todd Wittman, James McGreevey, Richard Codey and Jon Corzine, the Complaint against these defendants will be dismissed.
>
> With respect to the other defendants . . . , the Court finds that, although the body of the Complaint mentions Steve Johnson,

Officer Green, Lt. Kent and Paul Lagana by name, the additional factual assertions against these defendants are conclusory or too nebulous to "nudge" Plaintiff's claims of deliberate indifference "across the line from conceivable to plausible," as required by the Iqbal standard. Iqbal, 129 S. Ct. at 1951. In his Complaint, Plaintiff alleges that Steve Johnson "is allowing smoking indoors exposing me to environmental smoke (ETS) which poses an unreasonable risk of harm," and that Plaintiff "raised the issue at community meetings and submitted institutional remedy forms." (Docket entry #1 at p. 5.) The allegations regarding Johnson are similar to and precisely the sort of pleading the Supreme Court shunned in Iqbal. Plaintiff generally alleged that the was exposed to an "unreasonable risk of harm" he does not provide specific factual allegations to support this claim. Additionally, while he generally alleges that he complained of the smoking, he does not allege that he made any complaints to Johnson. Therefore, the Court finds that the allegations currently pled fail to state a plausible claim against Johnson.

As to defendants Green, Kent, and Lagana, Plaintiff pleads that in April 2007, Plaintiff had a conversation with Officer Green in which Plaintiff complained about being moved to a room (next to Plaintiff's prior room ) which was unsatisfactory to Plaintiff because the new room smelled of cigar smoke. When Green allegedly responded that "he did not care" (Docket entry #1 at p. 8), Plaintiff asked to see the nurse, the lieutenant and the administrator. Green allegedly denied Plaintiff's requests and told Plaintiff that Plaintiff had been moved to the room pursuant to instructions from Lagana and Kent. Plaintiff asserts that "[t]his event also ended in being threatened and excessive force." (Id.) Here, the allegation is merely that he was exposed to the old smell of smoke. Additionally, he does not even explain how long the room smelled of cigar smoke, how long he was housed in this room, and whether he suffered any ill effects from being housed in this room. Such allegations do not support a claim against these individuals that he was "exposed to *unreasonably* high levels of ETS." See Helling, 509 U.S. at 35 (emphasis added).

With respect to the allegations that Plaintiff was threatened and subjected to excessive force, Plaintiff does not plead who made the threats and what the threats were or who assaulted him and how. Therefore, the claims against these individuals are also dismissed for failure to state a claim upon which relief may be granted.

6

n/a

(Docket Entry #8, pp. 4-7.)

The Amended Complaint consists of a five-page narrative without numbered paragraphs. Excluding Plaintiff's legal arguments and citations, Plaintiff states in the Amended Complaint:

> And proving they are fully aware some staff members give "extra duty" to those caught smoking indoors, but some staff members, prisoners/patients, feel as though it is their right to smoke where ever and when ever and they will do as they want. Which becomes hypocricy [sic] at its best. And which includes some defendants in this case who openly smoke indoors.
>
> And compounding this problem is that this is the only mental health facility in the state that sells cigarettes, cigars, etc. . . . And PROVING the fact that there is smoking indoors by the prisoners/patients the yard access is only 3 ½ hours in the morning; 2 ½ hours in the afternoon, for which there is no yard after dinner for about 6 months of the year, which would only be an additional 3 hours; which equals only 6 hours a day of yard access where the rest of the day smokers are forced to smoke indoors at a rate of about 3 cigarettes per hour . . . . And if you factor in that most patients go to group in the morning then work in the afternoon some people cannot get outside during the week. And for which common sense shows how much smoking is conducted indoors which becomes the "EXPOSED TO UNREASONABLY HIGH LEVELS" standard in, "HELLING," 509 U.S. . . . .
>
> Also on page 5 you mention defendants Cindy Sweeney, George Hayman, Ronald Chen, Kevin Ryan, Merrill Main, Christine Wittman, James McGreevey, Richard Codey, Jon Corzine, Steven Johnson, Officer Green, Lt. Kent, and Paul Lagana for which the previous Governors Wittman, Codey, and McGreevey had been informed by JA over the years which is submitted as proof of a pattern of such conduct with no concern and for which since they are out of the 2 year filing limitation JA does not object to them being dismissed from this case.
>
> As to defendant Superintendent Cindy Sweeney she was informed of the smoking problem by JA and others at monthly community meetings, institutional remedy forms, letters through the mail, other lawsuits. etc., which is also the case with Superintendent Paul

Lagana and Lt. Kent. For which they REFUSE to remedy or even acknowledge . . . .

Also on page 6 you address Officer Green and the move. First, we will say clearly by denying JA an opportunity to see the nurse "VIOLATED CLEARLY ESTABLISHED LAW" . . . .

You mention "HOW LONG" was JA in that room which was about one year. For which as we know those carcinogens last for years on the walls, ceilings, clothes, etc., so the "OLD" smoke has lasting deadly effects.

And on page 6 you ask whether JA "SUFFERED AND ILL EFFECTS FROM BEING HOUSED IN THAT ROOM" for which in general we are forced to sit next to people talking on the phone smoking; eating meals in the dayroom smoking; even smoking in the small yard which is not much better, until it blows away unlike indoors, unless nobody goes to the yard which once again during those times JA was denied access by ALL defendants despite asking for such relief. And more directly YES, while moving his property into that room JA suffered nausea, chest pains, difficulty breathing including a restriction in the throat, etc....

And when JA complained to the relief Officer, defendant Clemens, he said "F*** YOU, TOO BAD" and for which when JA then attempted to go to medical when the door was opened for insulin shots for diabetics after Clemens said NO JA was grabbed by Clemens and taken to his room where Clemens punched JA in the head and said "IF YOU WRITE THIS UP I WILL KILL YOU" then locked JA in that room for the night which then made the headache he got while unpacking even worse. And for which we need to make clear 2 issues. First, this case is not about that excessive force but focuses on the smoking issue. And second though JA did complain to medical, `where he was given medication, and the DOC Administration DOC basically said "CLEMENS IS A COMPETENT PROFESSIONAL AND WOULD NOT DO THAT" for which he then went home and shot himself in the head killing himself proving not only the lack of concern or understanding, by both DOC and the mental health staff, but these people don't care who they kill and we ask that the next one not be JA by a slow and painful death that should be avoided such as cancer by second hand smoke . . . .

> In closing it is clear that any amount of second hand smoke is unreasonable and harmful according to common sense . . . .  For which JA has saw many defendants smoking indoors such as Clemens, Kent, Green, Lagana, as well as many others not named in the suit . . .
>
> Finally, it also must be stated that as JA was locked in his room writing defendant Clemens also made clear if he was "FILING A LAWSUIT IT WOULD BE THE LAST THING YOU DO" making clear staff are fully aware that JA has no problem addressing such violations to the courts . . .

(Docket Entry #11, pp. 1-5.)

## II.  STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] which was previously applied to determine if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  The pleading standard under Rule 8 was refined by the

---

[2]  The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a

    court should assume their veracity and then determine whether they
    plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

  The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A.  Elements of Claim

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S Ct. at 1947-48.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

To state a claim based on involuntary exposure to environmental tobacco smoke ("ETS"), plaintiff must show (1) "he himself is being exposed to unreasonably high levels of ETS," Helling v. McKinney, 509 U.S. 25, 35 (1993); (2) "the risk of which he complains is not one that today's society chooses to tolerate," id. at 36; and (3) defendant-official was deliberately indifferent to the serious risk to Plaintiff's future health from such exposure.[3]  See Helling, 509

---

[3] Because Plaintiff is civilly committed, his ETS claim is under the Due Process Clause of the Fourteenth Amendment.  See Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982).  However, Eighth Amendment standards are applicable to his claim.  See Rivera v. Marcoantonio, 153 Fed. App'x 857, 859 n. 1 (3d Cir. 2005); Inmates of Allegheny County Jail v. Pierce, 612 F. 2d 754,
(continued...)

U.S. at 35-36; Ford v. Mercer County Correctional Center, 171 Fed. App'x 416 (3d Cir. 2006); Atkinson v. Taylor, 316 F. 3d 257, 262 (3d Cir. 2003). As to deliberate indifference, "a prison official cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Atkinson, 316 F. 3d at 262 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

As to the objective component of the ETS claim, Plaintiff asserts that some defendants (Kent, Green, Lagana) have at some unspecified time smoked indoors, that patients have been exposed to smoking in the dayroom, small yard, and telephone room, and that some patients feel as if they have a right to smoke. However, Plaintiff does not assert facts showing that "he himself is being exposed to unreasonably high levels of ETS," which facts are required to satisfy the objective element of the ETS claim. Helling, 509 U.S. at 35. Plaintiff merely alleges that he occupied a room for one unspecified year that smelled of stale cigar smoke and that on one occasion, when he moved into this room (on an unspecified date), he suffered nausea, chest pains and difficulty breathing. Under these circumstances, Plaintiff has not asserted facts establishing the objective component. [4]

---

[3](...continued)
762 (3d Cir. 1979).

[4] Compare Helling v. McKinney, 509 U.S. 25, 35 (1993) (holding that bunking with a cell mate who smoked five packs of cigarettes per day exposed inmate to an unreasonable risk of future harm); Atkinson v. Taylor, 316 F. 3d 257, 259 (3d Cir. 2003) (a prisoner who claimed that he shared a cell with constant smokers for many months satisfied objective component); Alvarado v. Litscher, 267 F. 3d 648, 653 (7th Cir. 2001) (prisoner asserted that ETS exacerbated
(continued...)

Nor does Plaintiff assert facts substantiating how each defendant was deliberately indifferent to a risk to Plaintiff's health from his exposure to ETS. The Supreme Court has rejected a reading of the Constitution that "would allow liability to be imposed on prison officials solely because of the presence of objectively inhumane prison conditions." Farmer, 511 U.S. at 838. "[A] prison official cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. 837. Plaintiff alleges that "defendant Superintendent Cindy Sweeney she was informed of the smoking problem by JA and others at monthly community meetings, institutional remedy forms, letters through the mail, other lawsuits. etc., which is also the case with Superintendent Paul Lagana and Lt. Kent. For which they REFUSE to remedy or even acknowledge." (Docket Entry #11, p. 2.) However, Plaintiff alleges no facts showing when each defendant became aware that Plaintiff was being exposed to unreasonably high levels of ETS. Nor does he allege facts showing that each defendant responded unreasonably after becoming aware. See Farmer, 511 U.S. at 843

---

⁴(...continued)
severe chronic asthma); Whitley v. Hunt, 158 F. 3d 882, 887-88 (5th Cir. 1998) (prison doctor issued report noting that prisoner required non-smoking quarters), overruled on othe grounds by Booth v. Churner, 532 U.S. 731, 735 (2001) with Rivera v. Marcoantonio, 153 Fed. App'x 857 (3d Cir. 2005) (complaint of improper ventilation and imperfect enforcement of no-smoking policy failed to state claim where plaintiff could escape ETS exposure by going to his cell); Griffin v. DeRosa, 153 Fed. App'x 851 (3d Cir. 2005) (allegations that restrooms in prison do not have ventilation and plaintiff has been exposed to ETS in the restrooms for 20 months fails to satisfy objective component); Richardon v. Spurlock, 260 F. 3d 495, 498 (5th Cir. 2001) (sitting near smokers sometimes is not an unreasonable exposure to ETS); Pryor-El v. Kelly, 892 F. Supp. 261, 267 (D.D.C. 1995) where plaintiff alleged "only that various unnamed inmates and prison officials smoke in the TV room, games room, and the letter writing room, allegations did not satisfy objective component).

("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). For example, Plaintiff does not describe when the community meetings occurred, what was said at the community meetings by the patients and by each defendant, what was stated in any remedy forms or letters, when the remedy forms/letters were sent, who received the remedy forms, what rules the institution had regarding smoking, what he asked each defendant to do in response to the risk, and what the nature of the response of each defendant was to each complaint. Accordingly, this Court finds that the Amended Complaint does not assert enough specific, non-conclusory, facts to substantiate the conclusion that each, or any, defendant was deliberately indifferent to the health risk to Plaintiff posed by exposure to ETS. Because the Amended Complaint fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Iqbal, 129 S. Ct. at 1949, this Court will dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.

     Because Plaintiff is a civilly committed pro se litigant, this Court will give him a third and final opportunity to file a second amended complaint, which in and of itself states a cognizable § 1983 under Helling. Given that Plaintiff has persisted in making vague allegations and unsubstantiated conclusion, this Court will provide the following additional guidance. A statement of facts is similar to a newspaper article. Facts simply and specifically state who did what to whom, and when and where it was done. For example, the Supreme Court has explained that "[t]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation - for example, identifying a written agreement or even a basis for inferring a tacit agreement, . . . but a court is not required to accept

15

such terms as a sufficient basis for a complaint." Twombly, 550 U.S. at 557 (citations and internal quotation marks omitted).[5]  If Plaintiff elects to file a second and final amended complaint, this Court suggests that he fill in all the blanks on a § 1983 form complaint (avoid "see attached"), as the form is designed to elicit facts, list the defendants, state which defendant did what (and when and where) in numbered paragraphs that are in chronological order, and that Plaintiff avoid use of vague and general language, such as stating that defendants knew or defendants were deliberately indifferent.  Also, the second amended complaint must be complete on its face.[6]

---

[5] See, e.g., Holmes v. Gates, 403 Fed. App'x 670 (3d Cir. 2010) (allegations that, "[t]hroughout her employment, [she] has complained about mismanagement, malfeasance, and racially discriminatory practices by management officials," which has led to "racially discriminatory and retaliatory practices [being employed] against her," that these "practices have kept her stagnant in her career despite her qualifications and efforts to advance," and that defendants "creat[ed] a hostile[,] offensive and abusive work environment through the abusive working conditions, repeated and bogus disciplinary suggested actions, lies and deceit . . ." are too conclusory to state a claim under Iqbal); Mayercheck v. Judges of Pennsylvania Supreme Court, 395 Fed. App'x 839 (3d Cir. 2010) ("Mayerchek's assertions that they conspired with the other judicial defendants are mere conclusory allegations"); Bob v. Kuo, 387 Fed. App'x 134 (3d Cir. 2010) ("There is nothing in the complaint's specific allegations from which we can plausibly infer that the defendants were deliberately indifferent to Bob's serious medical needs"); Laffey v. Plousis, 364 Fed. App'x 791, 794 (3d Cir. 2010) ("Laffey alleged no facts which would establish a causal link between his suspension or demotion and the actions of any individual [defendant]").

[6] This Court will not try to piece together the allegations in the Complaint, Amended Complaint, and second amended complaint, like a puzzle.  Once an amended complaint is filed, the original complaint no longer performs any function in the case and cannot generally be utilized to cure defects in the amended complaint.  See 6 Wright, Miller & Kane, Federal Practice and Procedure:  Civil 2d § 1476 (1990).

## IV.  CONCLUSION

For the reasons set forth above, the Court dismisses the Amended Complaint, without prejudice to the filing of a final amended complaint.  The Court will enter an appropriate Order.

/s/ Jose L. Linares
**JOSE L. LINARES, U.S.D.J.**

Dated: June 22, 2011